UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TRUSTEES OF THE PAVERS AND ROAD BUILDERS
DISTRICT COUNCIL WELFARE, PENSION,
ANNUITY AND LOCAL 1010 APPRENTICESHIP,             **REPORT &**
SKILL IMPROVEMENT AND TRAINING FUNDS,              **RECOMMENDATION**
                                                   20-CV-1834-FB-SJB
                          Plaintiffs,

        -against-


PCM CONTRACTING CORP.,

                          Defendant.
------------------------------------------------------------------x

**BULSARA, United States Magistrate Judge**:

        Plaintiffs, the Trustees of the Pavers and Road Builders District Council Welfare,

Pension, Annuity and Local 1010 Apprenticeship, Skill Improvement, and Training

Funds (the "Trustees" and "Funds"), commenced this action against PCM Contracting

Corp. ("PCM") pursuant to sections 502(a)(3) and 515 of the Employment Retirement

Income Security Act of 1974 ("ERISA") and section 301 of the Labor Management

Relations Act of 1947 (the "LMRA") to recover delinquent contributions allegedly owed

to the Funds, in addition to interest, liquidated damages, and attorney's fees and costs.

On June 24, 2021, the Trustees filed an Amended Complaint. (First Am. Compl. dated

June 24, 2021 ("Am. Compl."), Dkt. No. 17). PCM failed to answer or otherwise

respond. The Trustees sought, (Req. for Certificate of Default dated July 21, 2021, Dkt.

No. 21), and on July 27, 2021 the Clerk of Court entered, a default against PCM.

(Certificate of Default dated July 27, 2021 ("Certificate of Default"), Dkt. No. 22). On

August 25, 2021, the Trustees moved for a default judgment. (Mot. for Default J. dated

Aug. 25, 2021, Dkt. No. 23). This motion was later withdrawn, and Trustees filed a

renewed motion on August 31, 2021.  (Notice of Mot. for Default J. dated Aug. 31, 2021

("Notice of Mot."), Dkt. No. 30).  The Honorable Frederic Block referred the motion to

the undersigned for a report and recommendation.

For the reasons outlined below, the Court respectfully recommends that the

motion for default judgment be granted in part and denied in part and damages and

attorney's fees and costs be awarded as detailed herein.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

The Funds are employee benefit plans within the meaning of section 3(3) of

ERISA, 29 U.S.C. § 1002(3).  (Am. Compl. ¶ 4).  They are operated in accordance with

the LMRA, 29 U.S.C. § 186(c).  (*Id*.).  Their respective Trustees have brought this suit on

their behalf.  (*Id*. ¶¶ 1, 4).

PCM, a construction company, is an employer within the meaning of section 3(5)

of ERISA, 29 U.S.C. § 1002(5), and in an industry affecting commerce under section 501

of the LMRA, 29 U.S.C. § 142.  (*Id*. ¶ 5).  Its principal place of business is 56 Tioga Walk,

Breezy Point, New York 11697.  (*Id*.).  PCM is party to a collective bargaining agreement

(the "CBA") with the Highway, Road and Street Construction Laborers Local Union 1010

(the "Union") which was in effect from April 1, 2018, to March 31, 2021 "and during each

year thereafter" (absent written notice to terminate).  (*Id*. ¶ 6; Decl. of Keith Loscalzo in

Supp. of Default J. dated July 2021 ("Loscalzo Decl."), Dkt. No. 31 ¶¶ 5–6; Agreement

Between the Union and the Employer April 1, 2018–March 31, 2021 dated Apr. 20, 2018

("CBA"), attached as Ex. 1 to Loscalzo Decl.).  As of the date this motion was filed, no

party provided notice to terminate.  (Loscalzo Decl. ¶ 7).

PCM is "obligated to pay specified contributions to the Funds in connection with

all work performed within the trade and geographic jurisdiction of the Union ('Covered

Work')." (Loscalzo Decl. ¶ 8 (citing CBA art. IX, § 1)). It is also required to submit reports on the number of hours of Covered Work performed by 35 days after the close of the month during which the work was performed. (*Id.* ¶ 10 (citing CBA art. IX, § 1(c)). And PCM is required to remit contributions within 35 days after the close of the month during which work was performed, and to make union assessments and remit them to the Funds. (*Id.* ¶¶ 11–13 (citing CBA art. IX, §§ 1, 4)).

In the event of a breach of these provisions, PCM is

liable for the payment of delinquent Contributions with interest at the rate of ten percent (10%) per annum (calculated from the Due Date), plus liquidated damages of ten percent (10%) of the amount of delinquent Contributions owing, and, in the event a legal action is commenced, all costs including, but not limited to, reasonable audit and accounting expenses, witness costs and attorneys' fees, disbursements and court costs.

(Policy for Collection of Delinquent Fringe Benefit Contributions ("Collection Policy"), attached as Ex. C to Decl. of Joseph Montelle in Supp. of Default J. dated July 30, 2021 ("Montelle Decl."), Dkt. No. 32, art. II, ¶ 5; Montelle Decl. ¶ 8; Am. Compl. ¶ 16).

These obligations are set forth in the Collection Policy, promulgated by the Trustees and created pursuant to a series of trust agreements (the "Trust Agreements"), which empower the Trustees "to establish the policy and the rules pursuant to which [the CBA and Funds] are to be operated and administered, including rules relating to the collection of contributions and other payments." (Am. Compl. ¶¶ 14–15; Am. and Restated Agreement and Decl. of Trust of the Pavers and Road Builders District Council Pension Fund, attached as Ex. B to the Montelle Decl., art. V, § 3(b); Am. and Restated Agreement and Decl. of Trust of the Pavers and Road Builders District Council Welfare Fund, attached as Ex. B to the Montelle Decl., art. V, § 3(b); *see also* Am. and Restated Agreement and Decl. of Trust of the Pavers and Road Builders District Council Annuity

Fund, attached as Ex. B to the Montelle Decl., art. VI, § 6.2 ("The Board of Trustees shall have the exclusive right to interpret the Plan and to decide any matters arising thereunder in connection with the administration of the Plan. The Board of Trustees may from time to time establish rules for the administration of the Plan and the transaction of its business."); Agreement and Decl. of Trust Local 1010 Apprenticeship, Skill Improvement and Training Fund, attached as Ex. B to the Montelle Decl., art. VI, § 1(D), (H) ("The Board of Trustees shall have the power and duty to: . . . [p]romulgate and establish rules and regulations for the administration and operation of the Training Plan in order to effectuate the purposes thereof . . . . [h]ave complete discretion to interpret the Training Plan and this Trust Agreement and to decide any matters arising thereunder in connection with the administration of the Plan and Trust[.]"); Montelle Decl. ¶ 6).

These Trust Agreements are incorporated by reference into the CBA and thereby bind PCM. (Am. Compl. ¶ 13 ("The Employer is bound by all of the terms and conditions of the Agreements and Declarations of Trust with respect to the Welfare Fund, Pension Fund, Training Fund and Annuity Fund, which Agreements and Declaration of Trusts are hereby made part of this Agreement and are incorporated herein."); CBA art. IX, § 1(b)).

The Trustees filed an Amended Complaint on June 24, 2021, which alleges violations of section 515 of ERISA, 29 U.S.C. § 1145, (Am. Compl. ¶¶ 23–27), and breach of the CBA in violation of section 301 of the LMRA, 29 U.S.C. § 185, (*id.* ¶¶ 28–34).

When this action was first commenced, PCM had failed to report the number of hours of Covered Work performed by each of its employees for the period October 2019 through January 2020, and owed interest on late payment of contributions for the

period January 2019 through September 2019.  (*Id.* ¶¶ 19–20).  During the pendency of this litigation, PCM rectified certain of these delinquencies, by submitting reports on Covered Work and contributions for the period October 2019 through April 2021, and paying the accrued late payment interest for the period January through November 2019.  (Mem. of Law in Supp. of Mot. For Default J. dated Aug. 31, 2021 ("Pl.'s Mem."), Dkt. No. 35 at 2–3).  PCM did not pay late payment interest for the period December 2019 through March 2021.  (*Id.* at 3; Decl. of Adrianna R. Grancio in Further Supp. of Default J. dated Dec. 20, 2021 ("Grancio Suppl. Decl."), Dkt. No. 37 ¶ 5).[1]

The motion seeks judgment against PCM in the amount of $75,021.00, which consists of: (1) $12,160.27 in interest on contributions paid late for the period December 2019 through March 2021; (2) $53,716.35 in liquidated damages; (3) $9,144.38 in attorney's fees and costs; and (4) post-judgment interest at the statutory rate.  (Pl.'s Mem. at 3, 10; Grancio Suppl. Decl. ¶ 9).  For the reasons stated below, the Court respectfully recommends that the motion be granted in part and denied in part and judgment entered in the amounts detailed below.

DISCUSSION

I.  <u>Entry of Default Judgment</u>

"Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a plaintiff to obtain a default judgment."  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief

---

[1] On December 14, 2021, the Court issued an order directing the Trustees to provide a revised damages calculation in light of certain inconsistencies.  Order dated Dec. 14, 2021.  They filed a Declaration clarifying a typographical error in their motion for default judgment papers.  Grancio Suppl. Decl. at 2.

5

is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. *Id*. r. 55(b)(2). The Clerk entered a default against PCM on July 27, 2021. (Certificate of Default).

The next question, before reaching liability or damages, is whether PCM's conduct is sufficient to warrant entry of a default judgment. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.*; s*ee also Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, PCM's failure to respond to the Amended Complaint demonstrates its default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' nonappearance and failure to respond "indicate willful conduct" and granting plaintiff's default judgment against them). PCM had sufficient notice of the present litigation, as a copy of the summons and Amended Complaint were served via the Office of the Secretary of State of the State of New York on June 28, 2021. (Executed Summons dated June 28, 2021, Dkt. No. 20). The motion for default judgment and supporting papers were also served via mail to PCM's last known business address. (Certificate of

Service dated Aug. 31, 2021, Dkt. No. 36).  Notwithstanding this notice and service, PCM did not respond to the Amended Complaint, did not appear, and has not in any way attempted to defend itself despite having made certain catch-up contributions.

As to the second factor, the Trustees would be prejudiced if the motion for default judgment were denied because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims adequately set forth in the Complaint." *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation); *Trs. of the Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Coop., Pension & Welfare Funds v. Lynnview Constr. Corp.*, No. 12-CV-5644, 2013 WL 4852312, at *7 (E.D.N.Y. Sept. 10, 2013) (adopting report and recommendation).

Third, the Court cannot conclude there is any meritorious defense to the allegations because PCM did not appear and no defense has been presented to the Court.  *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

All three factors weigh in favor of the entry of default judgment against PCM.  The Court now turns to the liability imposed, damages, and other relief to be awarded.

## II. Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc.*

*v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen.*
*Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016),
*report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016).

The court must then determine "whether the unchallenged facts constitute a
legitimate cause of action." 10A Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedure § 2688.1 (2020) ("Once the default is established, defendant has
no further standing to contest the factual allegations of plaintiff's claim for relief. Even
after default, however, it remains for the court to consider whether the unchallenged
facts constitute a legitimate cause of action, since a party in default does not admit
conclusions of law."); *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270
(E.D.N.Y. 2010) (adopting report and recommendation).

The Trustees have established liability under section 515 of ERISA and section
301 of LMRA.

The Trustees have demonstrated ERISA liability. PCM is bound by the CBA. And
section 515 of ERISA requires that "[e]very employer who is obligated to make
contributions to a multiemployer plan under the terms . . . of a collectively bargained
agreement shall . . . make such contributions." 29 U.S.C. § 1145; *see also Flanagan v.*
*Marco Martelli Assocs., Inc.*, No. 13-CV-6023, 2015 WL 1042279, at *8 (E.D.N.Y. March
9, 2015) (adopting report and recommendation) (noting that, under section 515 of
ERISA, "employers are required to pay fringe benefit contributions pursuant to an
effective collective bargaining agreement"). The trustees of a plan may, pursuant to
section 502, bring an action to enforce this requirement. *See* 29 U.S.C. § 1132(a)(3);
*Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313–14 (2d Cir. 1990). PCM

8

is alleged to be an employer in an industry affecting commerce within the meaning of ERISA, and the Funds are plans as defined by ERISA. (Am. Compl. ¶¶ 4–5).

The Trustees allege PCM failed to timely submit reports detailing the number of hours of Covered Work performed by each of its employees and failed to timely remit monetary contributions as required under the CBA. (*Id.* ¶¶ 7–9, 18–20). These allegations, on default, are sufficient to establish ERISA liability. *See, e.g.*, *Trs. of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16-CV-318, 2018 WL 4268907, at *3–*4 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038, at *1 (Sept. 5, 2018); *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011) (recommending that the employer's failure to make contributions to employee-benefit funds pursuant to a collective bargaining agreement "constitutes a violation of ERISA"), *report and recommendation adopted*, 2011 WL 5402898 at *1 (Nov. 4, 2011); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (adopting report and recommendation) ("The allegations in plaintiff's complaint establish the elements of liability required to state a claim under section 515 of ERISA . . . . Plaintiff alleges that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions.").

The Trustees have also established LMRA liability. Section 301 of the LMRA provides a cause of action against an employer in an industry affecting commerce for the "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "Under Section 301 of the LMRA, an employer may be held liable for failing to pay assessments or failing to remit dues withheld from employee paychecks to the union

as required by a collective bargaining agreement." *Sullivan*, 2011 WL 5401987, at *3. PCM is alleged to be an employer in an industry affecting commerce within the meaning of the LMRA, (Am. Compl. ¶ 5), and, as noted above, is bound by the CBA. The Trustees allege that PCM failed to timely remit contributions and reports for the period October 2019 through January 2020, and failed to timely remit contributions—and thereby incurred interest—for the period January 2019 through September 2019, as it was obligated to do pursuant to the CBA. (*Id*. ¶¶ 18–20, 30–31; *see* CBA art. IX, § l). These allegations are sufficient to establish liability. *See, e.g.*, *A.A. Danzo Sanitation, Inc.*, 2018 WL 4268907, at *3–*4 (recommending that an employer's failure to pay dues and assessments pursuant to a collective bargaining agreement constitutes a breach of the LMRA); *Sullivan*, 2011 WL 5401987, at *3 (same).

III.    Damages, Interest, and Fees

"While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quoting *Ann Taylor, Inc. v. Interstate Motor Carrier, Inc.*, No 03-CV-7502, 2004 WL 2029908, at *3 (S.D.N.Y. Sept. 13, 2004)), *report and recommendation adopted*, 2012 WL 1354481 at *2 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (adopting report and recommendation) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping*

*Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)).  "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

Plaintiffs who establish an employer's liability under section 515 of ERISA are entitled to an award of: "1) the amount of unpaid contributions; 2) interest on the unpaid contributions; 3) liquidated damages; 4) reasonable attorney's fees and costs, and 5) such other legal and equitable relief as the court deems appropriate." *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 257 (E.D.N.Y. 2007) (citing 29 U.S.C. § 1132(g)(2)), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 15218 at *1 (Feb. 28, 2008).  "An award of damages is also available under LMRA for those contributions not covered by ERISA but unpaid or paid late in violation of a collective bargaining agreement . . . or other contract." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. A.G. Constr. Corp.*, No. 13-CV-3590, 2014 WL 354647, at *4 (E.D.N.Y. Jan. 31, 2014) (adopting report and recommendation).  "LMRA damages are limited to those permitted in the relevant CBA and trust agreements." *Id.*

A. <u>Late-Payment Interest and Liquidated Damages</u>

"[A]n employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions before entry of judgment in a § 1132(g)(2) action brought to recover delinquent contributions." *Iron Workers Dist. Council of W. New York & Vicinity*

*Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995).

The Amended Complaint sought unpaid benefit contributions for the period of October 2019 through January 2020 and interest on those untimely contributions, as well as interest on untimely payments for a period from January 2019 through September 2019. (Am. Compl. ¶¶ 19–22, 26–27, 30–33). While the litigation was pending, PCM remitted its previously unpaid contributions for the period of October 2019 through January 2020, and beyond that, made the contributions it owed through April 2021. (Pl.'s Mem. at 2–3). PCM also remitted the late-payment interest it owed for the period January 2019 through September 2019, and the late-payment interest accrued through November 2019. (*Id.*). The Trustees concede that these payments have been made. (*Id.*).

The Trustees now seek an award of $12,160.27 in interest on late payments, which encompasses interest due for the period December 2019 through March 2021. (Pl.'s Mem. at 3; Decl. of Katy Kabala dated July 29, 2021 ("Kabala Decl."), Dkt. No. 33 ¶¶ 13–16; Late Payment Interest Report dated July 13, 2021 ("Late Payment Interest Report"), attached as Ex. F to Kabala Decl.). The Trustees also seek $53,716.35 in liquidated damages, which is 10% of $537,163.47, the total amount of delinquent ERISA contributions for the period October 2019 through March 2021. (Pl.'s Mem. at 3, 8–9).

Neither this interest nor liquidated damages was sought in the Amended Complaint. And although the Trustees amended their original complaint in June 2021, they did not update the period for which they were seeking interest or liquidated damages. (*See* Am. Compl. ¶¶ 31, 33 (seeking late payment interest through September 2019 only); *id.* ¶ 27 (with respect to the ERISA claim for delinquent contributions "for

the period October 2019 through January 2020[,]" seeking liquidated damages of 10% "of the delinquent contributions adjudged to be due and owing"); *id.* ¶ 32 (with respect to the LMRA claim, seeking liquidated damages of 10% "of the principal amount of the delinquency").  As a result, because of the operation of Rule 54(c), liquidated damages and interest may only be awarded for a portion of the period they now seek.

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  However, "a district court has discretion to award ERISA damages that accrue during the pendency of an action . . . [a]lthough Rule 54(c) limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of damages demanded in the complaint[.]".  *Ames v. STAT Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005) (internal citation omitted).  "Rule 54(c) is not violated . . . when a court awards damages that accrued during the pendency of the litigation if the complaint put defendant on notice that plaintiff might seek such damages" for example by including in the complaint "a request for unpaid contributions that might become due and owing during the litigation[.]".  *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010).

The Court cannot award liquidated damages or interest on unpaid contributions after January 2020.  There is no liability finding—*i.e.*, breach of the CBA—that extends past January 2020 through March 2021.  When the Amended Complaint was filed, the breach of the CBA was for failures to pay that extended through January 2020 only.  There was no suggestion of liability beyond January 2020.  And when the Clerk entered default on July 27, 2021, it was for the CBA breach alleged in the Amended Complaint, which ran only until January 2020, not for any subsequent breaches.  There is no

Complaint alleging non-payment by PCM for the post-January 2020 period, and no liability imposed for a non-payment in that period.

Rule 54(c) prevents the Trustees from seeking recovery "different in kind" from that sought in the Amended Complaint. *La Barbera v. J F H Mak Trucking, Inc.*, No. 98-CV-7291, 2007 WL 1827833, at *4 (E.D.N.Y. June 22, 2007) ("[I]t would be fundamentally unfair to allow plaintiffs to utilize defendant's default as a basis upon which to secure 'supplemental' damages . . . beyond those demanded in plaintiffs' pleading."). Here, a post-January 2020 award would be a different form of relief. Liquidated damages and interest for the period after January 2020 represent an entirely new type of recovery that was not sought in the Complaint, which only sought to penalize and recover for unpaid contributions not made before January 2020. Courts in similar circumstances have declined to award liquidated damages. *See Triple A Grp., Inc.*, 708 F. Supp. 2d at 282, 289 (awarding liquidated damages for those contributions that were "unpaid at the time the suit was commenced and for those that accrued during the litigation but remain unpaid[,]" but not for "contributions [that] defendants paid *late* that accrued after this lawsuit was filed.") (emphasis in original).

The catch-all language in the Amended Complaint, which provides that the Trustees are seeking all liquidated damages and interest accrued during the pendency of the litigation and both before and after judgment is entered, (*see* Am. Compl. ¶¶ 21, 27, 32), does not permit the award of liquidated damages or interest accrued after January 2020. The catch-all provision is a demand for "liquidated damages, and attorneys' fees determined to be due according to the CBA for any weeks that are unpaid as of the date judgment is entered and thereafter." In other words, it is damages and fees teed off of an underlying "unpaid" "week[]." The Complaint does not allege any unpaid weeks after

January 2020; the clause would have to seek recovery for liquidated damages and interest for any period, even if the underlying contributions went unpaid after the Complaint was filed.  This savings clause does not seek such a recovery—it only seeks interest and damages on unpaid contributions up through January 2020.  *See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Tri State Constr. & Masonry Corp.*, No. 15-CV-6686, 2017 WL 9485701, at *6 (E.D.N.Y. May 11, 2017) (declining to award liquidated damages for weeks not pled in complaint as being unpaid), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 90788, at *1 (E.D.N.Y. June 13, 2017); *Trustees of Sheet Metal Workers Int'l Ass'n Loc. Union No. 28 Ben. Funds v. Martin*, No. 13 Civ. 5604, 2014 WL 5089354, at *2 (S.D.N.Y. Sept. 24, 2014) ("Although Plaintiff requested that Judge Netburn recommend an award of damages for the period of August 26, 2009 through August 25, 2010, Judge Netburn limited Plaintiff's recovery to the period specified in the Complaint—*i.e.,* August 26, 2009 to April 21, 2010.  The Court adopts this limitation because [of] . . . Federal Rule of Civil Procedure 54(c)[.]") (internal citations omitted).  The Trustees could have filed a new lawsuit or sought leave to file an amended complaint here to impose liability for additional periods, but they did not.  *Silge v. Merz*, 510 F.3d 157, 162 (2d Cir. 2007).

The Amended Complaint, however, did seek to impose liability for unpaid contributions from December 2019 and January 2020.  (*E.g.*, Am. Compl. ¶¶ 19, 21, 26, 30).  It would be appropriate to award interest and liquidated damages for those months, since the Amended Complaint clearly seeks such recovery for that period.  (*E.g.*, *Id.* ¶ 27 (with respect to the ERISA claim covering delinquent contributions "for the period October 2019 through January 2020[,]" seeking "liquidated damages in the

amount of ten percent (10%) of the delinquent contributions adjudged to be due and owing"); *id* ¶ 32 (with respect to the LMRA claim, seeking "liquidated damages of ten percent (10%) of the principal amount of the delinquency")). And as noted, the Trustees ability to obtain interest and liquidated damages is not extinguished by late-payment of the underlying contributions.

"Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." *Sullivan*, 2011 WL 5401987, at *6; *see also Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773, 2019 WL 1130729, at *7 (E.D.N.Y. Feb. 11, 2019), *report and recommendation adopted*, 2019 WL 1128356 at *1 (Mar. 12, 2019). The Collection Policy provides for liquidated damages at 10% of the amount owed. (*See* Collection Policy art. II, ¶ 5; Am. Compl. ¶ 16). The liquidated damages due on ERISA contributions owed for the period October 2019 through January 2020 is $15,925.98, which is 10% of $159,259.83, the total contributions for that period. (*See* PCM Liquidated Damages Calculations, attached as Ex. E to Montelle Decl.). Therefore, the Trustees are entitled to $15,925.98 in liquidated damages, and the Court recommends an award in this amount. *Cf. New York City Dist. Council of Carpenters Pension Fund v. Quantum Constr.*, No. 06 CIV 13150, 2008 WL 5159777, at *4 (S.D.N.Y. Dec. 9, 2008) ("Rule 54(c) requires that a judgment by default 'must not differ in kind from or exceed in amount, what is demanded in the pleadings.' Accordingly, this Court agrees that it is proper to exclude checks paid outside of the date range identified in the Complaint."). As for interest, as noted, the only interest that is recoverable is that for the months

December 2019 and January 2020, which equals $4,147.61. (*See* Late Payment Interest Report).[2]

C.     Attorney's Fees

The Trustees seek $8,592.00 in attorney's fees to compensate for 39.4 hours of work on the case. (Decl. of Adrianna R. Grancio in Supp. of Default J. dated Aug. 31, 2021 ("Grancio Decl."), Dkt. No. 34 ¶ 16; Virginia & Ambinder, LLP Invoice for Professional Services dated Aug. 11, 2021 ("Invoice for Professional Services"), attached as Ex. K to Grancio Decl. at 8). Pursuant to section 502 of ERISA, where an action is brought by a fiduciary to enforce section 515 of ERISA, the court "shall award . . . reasonable attorney's fees . . . to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). Additionally, the Collection Policy provides that an employer who fails to make timely payments of contributions is "liable . . . , in the event a legal action is commenced, [for] . . . attorneys' fees[.]" (Collection Policy art. II, ¶ 5).

In assessing whether legal fees are reasonable, a court must determine the "presumptively reasonable fee" for an attorney's services by examining what a reasonable client would be willing to pay. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable

---

[2] The interest on late payments sought in the Trustees's motion is calculated according to the terms of the CBA and Collection Policy, which provide that should PCM fail to make a required contribution when due, interest will be awarded at rate of ten percent (10%) per annum, calculated from the due date. *See* Kabala Decl. ¶ 9; Montelle Decl. ¶ 8. The Trustees's methodology for determining interest owed properly calculates this figure from the due date of each required contribution through the date the contributions were received but no further. *See* Kabala Decl. ¶¶ 10–16; Late Payment Interest Report.

hourly rate for the legal services performed. *Id.* The next step is to determine the reasonableness of the hours expended by counsel. *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–*5 (E.D.N.Y. Feb. 26, 2007), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770, at *3 (Mar. 19, 2008). The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary." *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (adopting report and recommendation) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

As for the reasonableness of the proposed hourly rate, courts examine the experience and qualifications of counsel seeking the fee award. The Trustees were represented by attorneys Nicole Marimon, John Harras and Adrianna Grancio from the law firm of Virginia & Ambinder, LLP ("V&A"). (Grancio Decl. ¶¶ 11–13). Counsel submitted contemporaneous billing records documenting the legal services rendered by V&A for work performed, including the date of service, the amount of time during which services were provided, the name of the attorney, and a description of services performed. (*See* Invoice of Professional Services). The Trustees seek an award at a rate of $250 per hour for the work performed by each of the three attorneys, as well as a rate of $80 per hour for the work performed by various legal assistants. (Grancio Decl. ¶¶ 11–14).

Ms. Marimon is a partner and a 2014 graduate of Fordham University School of Law, and she has served as lead counsel on numerous ERISA cases. (*Id.* ¶ 12). Mr. Harras is a partner and a 2015 graduate of St. John's University School of Law who "routinely acts as lead counsel in the prosecution of ERISA collection actions." (*Id.* ¶

13).  Ms. Grancio is an associate and 2016 graduate of St. John's University School of Law, and she has prosecuted "numerous" ERISA cases.  (*Id.* ¶ 11).

In ERISA matters, courts in the Eastern District of New York have approved hourly rates for partners from $200 to $450 per hour, *e.g.*, *Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Northcoast Maint. Corp.*, No. 17-CV-5072, 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018), and rates ranging from "$200 to $300 for senior associates, $100 to $200 for junior associates, and $70 to $80 for legal assistants." *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at *6 (E.D.N.Y. July 31, 2015), *report and recommendation adopted*, 2015 WL 5330388 at *1 (Sept. 11, 2015).  However, "courts have 'accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range.'" *Captre Elec. Supply Co.*, 2015 WL 5316257, at *6 (quoting *Trs. of the Pavers & Road Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. JREM Constr. Corp.*, No. 12-CV3877, 2013 WL 618738, at *9 (E.D.N.Y. Jan. 28, 2013), *report and recommendation adopted*, 2013 WL 623573 at *1 (Feb. 19, 2013)).

As such, the Court finds that the partner rate for Ms. Marimon and Mr. Harras, the senior associate rate for Ms. Grancio, and the rate for V&A's legal assistants are reasonable.  *See, e.g.*, *Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp.*, No. 19-CV-2312, 2020 WL 1668041, at *8 (E.D.N.Y. Mar. 5, 2020) (approving $250 per hour for Ms. Marimon and Ms. Grancio and $80 per hour for their legal assistants), *report and recommendation adopted*, 2020 WL 1666461 at *1 (Apr. 3, 2020).

Turning next to the reasonableness of the time expended, according to the billing records submitted, the Trustees's attorneys and legal assistants spent 32 hours and 7.4 hours on the case, respectively. (*See* Invoice of Professional Services). Although this is slightly higher than the amount of time typically spent on such motions, it is within the range of reasonable hours expended in similar ERISA cases involving default judgment. *See, e.g.*, *Gesualdi v. Torretta Trucking Inc.,* No. 10-CV-1249, 2012 WL 1102803, at *9 (E.D.N.Y. Mar. 12, 2012) (finding "22.8 hours at attorney rates and 6.3 hours at paralegal rates to be reasonable" in an ERISA default judgment action) (footnote omitted), *report and recommendation adopted*, 2012 WL 1103179 at *1 (Apr. 2, 2012); *Trs. of the Pavers & Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Base Constr. Corp.*, No. 16-CV-4068, 2017 WL 3017187, at *5 (E.D.N.Y. June 20, 2017) (recommending a reduction in claimed attorney's fees and establishing that 22.95 hours of attorney work and 4.5 hours of paralegal work are reasonable in an ERISA default litigation), *report and recommendation adopted*, 2017 WL 3016804 at *1 (July 14, 2017)); *cf. Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 165 (E.D.N.Y. 2008) (finding 91.4 hours unreasonable). The Court thus recommends a total of $8,592.00 be awarded in attorney's fees, as outlined in the chart below.[3]

---

[3] The Trustees also seek "reasonable legal fees in this action of $3,202 pursuant to the relevant collective bargaining agreement and ERISA § 502(g)." (Grancio Decl. ¶ 17). This figure is distinct from both the $8,592.00 sought as fees, which are supported by the Invoice, and the $552.38 sought in costs, which are also documented. Because the Trustees have not explained the basis for this award, or provided supplemental documentation to support it, the Court declines to award it.

| Name | Position/Title | Rate | No. of Hours | Amount Owed |
|------|---------------|------|--------------|-------------|
| N. Marimon | Partner | $250/hr | 0.4 | $100.00 |
| J. Harras | Partner | $250/hr | 0.3 | $75.00 |
| A. Grancio | Associate | $250/hr | 31.3 | $7,825.00 |
| Various | Legal Assistants | $80/hr | 7.4 | $592.00 |
| **Total**: | | | 39.4 | $8,592.00 |

D.    Costs

The Trustees seek reimbursement for $552.38 in costs, which is comprised of $400.00 in court filing fees, $143.00 in service of process fees, $9.20 in postage fees, and $0.18 in legal research costs.  (*See* Grancio Decl. ¶ 18; Invoice of Professional Services at 8).  ERISA provides that "[a]n award of reasonable costs is mandatory in a successful action to recover delinquent contributions."  *Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-0814, 2012 WL 1077796, at *12 (E.D.N.Y. Mar. 6, 2012), *report and recommendation adopted*, 2012 WL 1078470 at *1 (Mar. 30, 2012); *see also* 29 U.S.C. § 1132(g)(2)(D).  Recoverable costs include "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients."  *Detore Elec. Constr. Co.*, 2012 WL 1077796, at *12 (alteration in original) (quoting *Trs. of the Road Carriers Loc. 707 Welfare Fund v. Goldberg*, No. 08-CV-884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009) (adopting report and recommendation)).  Plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying."  *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).  Filing fees are recoverable without supporting documentation if verified by the docket.  *E.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (adopting report and recommendation in part); *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017)

(stating that the filing fee is "a fact of which the Court can take judicial notice"), *report and recommendation adopted*, 2017 WL 1906902 at *2 (May 9, 2017).

The docket indicates the $400 filing fee was paid.  (Dkt. No. 1).  Therefore, although the Trustees did not submit a receipt, the filing fee should be awarded.

Process server fees are also recoverable, but they must be supported by documentation.  *See Martinez v. Alimentos Saludables Corp*., No. 16-CV-1997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) (recommending that the plaintiffs not be awarded process server fees absent supporting documentation and noting that "failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714, at *1 (Oct. 18, 2017*); Sheldon v. Plot Commerce*, No. 15-CV-5885, 2016 WL 5107072, at *20 (E.D.N.Y. Aug. 26, 2016) (recommending the costs for serving defendant "be denied due to lack of adequate documentation"), *report and recommendation adopted*, 2016 WL 5107058, at *1 (Sept. 19, 2016).  The Trustees's affidavit of service reflects that the cost to serve PCM with both the original Complaint and the Amended Complaint via the Secretary of State was $40.00 each.  (Executed Summons, Dkt. No. 5; Executed Summons, Dkt. No. 20).  The billing records submitted by V&A reflect that the cost to serve PCM was $70.00 for the original Complaint, and $73.00 for the Amended Complaint.  (Invoice for Professional Services at 8).  In light of this conflicting evidence, this Court recommends the lower of these amounts and thus recommends the Trustees be awarded a total of $80.00 in service costs.  *See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, & Skill Improvement & Safety Funds v. Kel-Tech Constr. Inc*., No. 19-CV-2487-ENV-SJB, 2020 WL 6051097, at *10 (E.D.N.Y. Aug. 25, 2020).

The Court also finds the Trustees's postage costs reasonable. *See, e.g.*, *Finkel v. Robco Elec. Corp.*, No. 11-CV-2353, 2012 WL 3306963, at *13 (E.D.N.Y. Mar. 30, 2012) (recommending an award of "$28.36 for postage, photocopies and facsimiles" in ERISA default judgment case), *report and recommendation adopted*, 2012 WL 3307631 at *1 (Aug. 13, 2012); *Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, No. 13-CV-1873, 2014 WL 1399417, at *8 (E.D.N.Y. Apr. 10, 2014) (adopting report and recommendation) (approving "$16.80 for postage, photocopies, and accessing the docket" in ERISA default judgment case). These costs are also supported by the record. V&A's billing records reflect that the postage cost $9.20. (Invoice for Professional Services at 8). Other Courts in this District have relied on such records to approve similar postage costs. *E.g.*, *Base Constr. Corp.*, 2017 WL 3017187, at *5 (recommending an award in an ERISA default case which includes $7.96 in postage, supported by V&A billing records).

Finally, the Court finds the Trustees's research costs, reflected as an invoice to LexisNexis $0.18, to be reasonable. (Invoice for Professional Services at 8). *Trs. of Loc. 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr.*, No. 19-CV-1809, 2020 WL 7034025, at *14 (E.D.N.Y. Sept. 23, 2020), *report and recommendation adopted*, No. 19-CV-1809, 2020 WL 7021646 at *2 (E.D.N.Y. Nov. 30, 2020).

Thus, the Court respectfully recommends an award of costs in the amount of $489.38.

E. <u>Post-Judgment Interest</u>

The Trustees seek an award of post-judgment interest at the statutory rate. The Second Circuit has recognized that "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d

542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)). "The post-judgment interest rate in an ERISA action is tied 'to the weekly average 1-year constant maturity Treasury yield . . . for the week preceding the date of judgment.'" *Genworth Life & Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008) (alteration in original) (quoting 28 U.S.C. § 1961(a)). The Court therefore recommends post-judgment interest be granted on the total award, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters final judgment until the date of payment. *See Trs. of Loc. 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr.*, No. 19-CV-1809, 2020 WL 7034025, at *14 (E.D.N.Y. Sept. 23, 2020), *report and recommendation adopted*, No. 19-CV1809, 2020 WL 7021646 (E.D.N.Y. Nov. 30, 2020).

<u>CONCLUSION</u>

For the reasons stated, it is respectfully recommended that the Trustees's motion for a default judgment be granted in part and denied in part and that judgment be entered against PCM as follows:

- $4,147.61 in interest;
- $15,925.98 in liquidated damages;
- $8,592.00 in attorney's fees; and $489.38 in costs;
- post-judgment interest in an amount to be calculated by the Clerk of the Court pursuant to 28 U.S.C. § 1961(a).

Any objections to the Report and Recommendation above must be filed with the Clerk of Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.") (quotations omitted).

     The Trustees are directed to serve a copy of this Report and Recommendation on PCM and file proof of such service on ECF.

                    SO ORDERED.

                    */s/ Sanket J. Bulsara*  February 3, 2022

                    _____
                    SANKET J. BULSARA
                    United States Magistrate Judge

Brooklyn, New York